IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CYTOSPORT, INC.,

      Plaintiff,                                      CIV S-06-1799 DFL EFB

      vs.

NATURE'S BEST, INC.

      Defendant.                                <u>ORDER</u>

        This case was before the undersigned on March 28, 2007, for hearing on defendant's motion to compel discovery. Mark M. Bettilyon appeared as counsel for plaintiff; Kieran G. Doyle appeared as counsel for defendant. This order addresses defendant's specific discovery requests, and identifies those requests that the parties, at the hearing, agreed to continue trying to resolve. The parties shall file with the court by April 11, 2007, a joint report regarding the status of their continued efforts to resolve those requests. The requests not subject to further meet and confer efforts are resolved as provided herein.

**I.    BACKGROUND**

        This case is proceeding on the complaint filed August 11, 2006, and defendant's counterclaim, filed September 12, 2006. Plaintiff and counterdefendant, CytoSport, Inc. ("CytoSport") manufactures and sells various nutritional and dietary supplement products.

1

1  CytoSport alleges that defendant and counterclaimant, Nature's Best, Inc. ("Nature's Best"),
2  infringed its "MUSCLE MILK" trademark by offering a milk drink product for sale under the
3  mark "MICELLAR MILK." Nature's Best asserts causes of action in its counterclaim for false
4  advertising and false labeling under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

5    On November 21, 2006, Nature's Best served its First Set of Interrogatories and Requests
6  for Production of Documents. It appears that CytoSport served its responses piecemeal, and it is
7  unclear to the court whether or not CytoSport's counsel signed the responses as required under
8  Fed. R. Civ. P. 26(g). *See* Joint Statement Regarding Discovery Disagreements ("Joint
9  Statement"), Exhibit B at p. 43 (showing only signature of CytoSport representative Bobbie
10 White).

11   Nature's Best seeks to compel responses to several interrogatories and requests for
12 production of documents. Apparently in recognition of the proprietary nature of the "secret
13 formulas" used to produce each party's product, the parties have agreed not to produce "formula
14 information." Unfortunately, much of the present disagreement seems to stem from that earlier
15 agreement. As discussed at the hearing and agreed to by the parties, the court has permitted the
16 parties additional time to confer as to the parameters of their agreement not to produce secret
17 "formula information." The parties shall submit to the court a report as to the progress of those
18 negotiations by April 11, 2007. With regard to the remaining disputed discovery items, the court
19 issues the following order.

20 **II.    INTERROGATORIES**

21   Rule 33(b)(2) requires that answers to interrogatories " be signed by the person making
22 them, and the objections signed by the attorney making them." Fed. R. Civ. P. 33(b)(2). It is
23 unclear whether CytoSport's counsel signed all of its objections to Nature's Best's discovery
24 requests. If CytoSport's counsel has not in fact sign its objections, the court hereby orders it to do
25 so.
26 ////

A. <u>Interrogatory no.10</u>

Interrogatory no. 10, asks CytoSport to "identify all nutritional supplements, food products and dietary supplements sold or distributed bearing trademarks or names that comprise or contain the word 'milk.'" CytoSport objects to this interrogatory, arguing that it is overbroad, uncertain, unintelligible and calls for information that is publicly available.

The court agrees that as it is currently drafted, this interrogatory is overly broad in scope. As discussed at the hearing, Nature's Best shall redraft this interrogatory to be more specific, and CytoSport shall provide an unqualified, verified response thereto within thirty days of being served with the redrafted interrogatory.

B. <u>Interrogatory nos. 12 and 13</u>

Interrogatory no. 12, as propounded on CytoSport, provides: "Which of the products listed in response to Interrogatory No.11, [sic 10] purport to contain ingredients or proteins derived from milk or soy?" Interrogatory no. 13 asks CytoSport to "describe all communications between [it] and any third parties who use or have used trademarks or names that comprise or contain the word 'milk' or in connection with nutritional supplements, food products and dietary supplements."

CytoSport objects that these interrogatories are overbroad, uncertain, unintelligible and call for information that is publicly available. Nonetheless, in its amended response, CytoSport identified some bates-stamped documents as responsive. According to Nature's Best, CytoSport's response referred to third parties that have been the subject of legal action by CytoSport.

In the Joint Statement, Nature's Best clarified that these interrogatories seek information pertaining to third parties using similar trademarks on products containing milk or soy proteins against whom CytoSport has chosen to take *no* legal action or with whom CytoSport settled similar disputes.

////

In light of this clarification, Nature's Best is ordered to redraft these interrogatories to more specifically identify the information sought. At the hearing, CytoSport offered no objection to this more specifically articulated request, and the court finds that such interrogatories are likely to lead to information relevant to the claims and defenses in this case. *See* Fed. R. Civ. P. 26(b)(1). In particular, they are aimed at gathering information regarding CytoSport's efforts to police its trademark, which may bear on the issue of the relative strength of its mark. *See, e.g., Ty, Inc. v. Jones Group, Inc.*, 98 F. Supp. 2d 988, 994 (D. Ill. 2000) (analyzing strength of plaintiff's mark, in part, by its policing efforts). The strength of the registered mark is a crucial factor in evaluating the ultimate issue of infringement. *See Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1018-19 (9th Cir. 2004).

Accordingly, within thirty days of being served with the redrafted versions of interrogatories nos. 12 and 13, CytoSport shall provide verified responses thereto. CytoSport's objections on the basis of relevance are denied, and it shall provide the requested information unless it is privileged or otherwise protected; any objection on that basis shall be accompanied by a privilege log that complies with Fed. R. Civ. P. 26(b)(5).

C.  <u>Interrogatory no. 17</u>

Interrogatory no. 17, served by Nature's Best asks CytoSport to "describe the basis for the claim that CytoSport MUSCLE MILK is 'Carb Conscious,' and identify all documents referring or relating to such claim."

This discovery request relates to Nature's Best counterclaim for false advertising and false labeling under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125. Nature's Best asserts that CytoSport failed to identify the requested documents. CytoSport objects to this interrogatory on the basis of relevance, citing its motion to dismiss currently pending before the district judge. In that motion, CytoSport argues that Nature's Best is precluded from pursuing its false advertising claims as to CytoSport's claims of "carb consciousness," because such matters are within the exclusive jurisdiction of the Food and Drug Administration. In its initial response to

4

interrogatory no. 17, CytoSport states that it "will not produce additional documents until that motion is decided." *See* Joint Statement, Exhibit B.

However, in the Joint Statement, it appears that CytoSport did produce some documents, including "five pages of documents that relate to a Carnation product and a recipe from the website of an apricot farmers association." *See* Joint Statement, 29:21-23. CytoSport provides in the Joint Statement that "its use of 'carb conscious' falls within the parameters of use of that phrase by others in the marketplace. . . [and that it] produced examples of such use and will continue to produce similar examples on an ongoing document. These are CytoSport's only responsive documents." *Id.*, at 29:25-28.

Regardless of what CytoSport has now produced, the court admonishes it that it has no right to withhold discovery responses solely because a motion to dismiss is pending. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) ("The mere filing of the motion [to dismiss] does not automatically stay discovery. Nor does it mean that a court will automatically grant a stay pursuant to Rule 26(c) simply because a defendant asks for one.") (citations omitted). The requested information is clearly relevant to Nature's Best counterclaims, which have yet to be, and might not be, dismissed.

Unless and until a stay of discovery is entered regarding Nature's Best's counterclaims (or unless those claims are dismissed), CytoSport is under a duty to provide the requested discovery. As of the date of the hearing, no such order has been entered. Accordingly, CytoSport shall provide a complete, verified response to interrogatory no. 17, and shall specifically identify all relevant documents referred to therein. To the extent it has previously identified all requested documents, it shall provide a verified response to that effect.

D. <u>Interrogatory nos. 18 and 19</u>

Interrogatory no. 18, served by Nature's Best asks CytoSport to "list all products of CytoSport or any [of] its Related Companies that use the phrase "Lean Muscle Formula" on their labels or in their advertising or promotional material." Relatedly, interrogatory no. 19 asks

5

CytoSport to "describe the basis for the claim that CytoSport MUSCLE MILK has a 'Lean Muscle Formula,' and identify all documents referring or relating to such claim."

CytoSport initially objected to interrogatory no. 18, arguing that it was "overburdensome, immaterial and irrelevant to the subject matter of this action." It further stated that it had "filed a motion with the Court regarding the relevance of this Interrogatory and that it [would] not produce additional documents until that motion is decided." *See* Joint Statement, at 10:12-16. It then provided an amended response of, simply, "Muscle Milk." CytoSport's response to interrogatory no. 19 was almost identical.

CytoSport further argues that Nature's Best is not entitled to this discovery because its counterclaim does not include a specific allegation as to the falsity of CytoSport's claim regarding MUSCLE MILK's "Lean Muscle Formula." In support of this position, CytoSport cites the Notes to the 2000 Amendments to Rule 26(b)(1), which provide that the changes to the rule "signal to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *See* Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes to the 2000 Amendment (discussing revised language limiting scope of discovery to the parties' "claims and defenses").

Here, the counterclaim filed by Nature's Best asserts a Lanham Act claim for false advertising and false labeling. Simply because it contains no specific allegation as to the statement "Lean Muscle Formula" does not mean that discovery as to that statement is precluded. Rule 26(b)(1) permits discovery "regarding *any matter*, not privileged, that is *relevant to the claim or defense* of any party." Fed. R. Civ. P. 26(b)(1) (emphasis added). Nature's Best has specifically identified "carb conscious" and "burn fat don't store it" as allegedly false statements on CytoSport's packaging. The phrase "lean muscle formula" is logically tied to those specifically identified phrases. Further, it is relevant to Nature's Best's general claims regarding the alleged false representations as to the "characteristics and qualities of [CytoSport's] Muscle Milk products." *See* Counterclaim, at ¶ 15. Further, defendant's allegations that CytoSport

6

falsely represents the characteristics of its product are relevant to defendant's unclean hands defense.[1]

The court again cautions CytoSport that it has no unilateral right to withhold information merely because a motion to dismiss is pending. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 336. CytoSport shall provide a complete, verified response to interrogatories nos. 18 and 19, and it shall specifically identify all relevant documents referred to therein. References to responses made to other interrogatories are not sufficient. To the extent CytoSport has previously identified all requested documents, it shall provide a verified response to that effect.

E.  Interrogatory no. 21

Interrogatory no. 21, served by Nature's Best asks CytoSport to "describe the basis for the claim that CytoSport Muscle Milk will "Burn Fat Don't Store it" and identify all documents referring and relating to such claim."

Initially, CytoSport responded as described above, objecting to the relevance of this interrogatory and citing the pending motion to dismiss as a basis for its refusal to respond. CytoSport later provided an amended response with a statement regarding the contents of MUSCLE MILK, including MCTs (medium chain triglycerides), which are "directed to fueling the body rather than storage as fat." Joint Statement, at 13:15-23.

---

[1] "The unclean hands doctrine closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief. The party must have acted fairly and without fraud or deceit as to the controversy in issue." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) (citations omitted). "To make out an unclean hands defense, a trademark defendant "must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (citations omitted). "Historically, courts have recognized two types of 'related conduct' that will permit application of the unclean hands doctrine in a trademark case. The first involves inequitable conduct toward the public, such as deception in or misuse of the trademark itself, resulting in harm to the public such that it would be wrong for a court of equity to reward the plaintiff's conduct by granting relief." *Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004) (citing *Clinton & Worden v. Cal. Fig Syrup Co.*, 187 U.S. 516, 528 (1903)). This appears to be the position of Nature's Best regarding its unclean hands defense. Without commenting on the merits of that defense, the court finds that defendant is entitled to gather discovery relevant to it.

Nature's Best argues that this response fails to address the truth or falsity of the "Burn Fat" statement. CytoSport maintains that it has responded fully to this interrogatory. Again, as discussed in the preceding paragraphs, the court finds that this interrogatory is aimed at seeking information relevant to defendant's counterclaim and defenses, and that CytoSport has no unilateral right to withhold discovery simply because a motion to dismiss is pending.

CytoSport shall provide a complete, unqualified, and verified response to this interrogatory, and shall specifically identify all relevant, responsive documents. To the extent CytoSport has already provided a full response to this interrogatory, it shall provide a verified statement to that effect.

### III. DOCUMENT REQUESTS

Although Fed. R. Civ. P. 34 governing production of documents does not contain an explicit requirement that responses be verified, Rule 26(g) requires the party's *attorney* to sign all discovery responses or objections, certifying that the response or objection is made in good faith. *See* Fed. R. Civ. P. 34 and 26(g)(2). "If a request, response, or objection is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the party making the request, response, or objection. . . ." Fed. R. Civ. P. 26(g)(2).

Despite the lack of a verification requirement in Rule 34, courts occasionally order a responding party to provide verified responses when a dispute arises as to whether or not all the requested documents have been produced. *See e.g., Soto v. City of Concord*, 162 F.R.D. 603, 623 (N.D. Cal. 1995) (requiring defendants to provide verification that the documents previously supplied in response to document requests were all such documents of that kind obtainable by the defense); *Jensen v. Boston Insurance Co.*, 20 F.R.D. 619, 621 (N.D. Cal. 1957) (requiring party to state under oath rather than by way of a "general, unverified allegations" that the documents sought were not in existence).

Based on the documents filed with the parties' Joint Statement, it is unclear whether or not CytoSport's counsel signed both its initial and "amended" responses to Nature's Best's First Set

8

of Interrogatories and Requests for Production of Documents, as required under Fed. R. Civ. P. 26(g). If in fact counsel did not sign the responses, the court hereby orders it to do so, including any and all supplemental responses directed by this order. Further, as more specifically indicated herein, the court orders CytoSport to verify any responses wherein it represents that it has produced all responsive documents in its possession, custody or control.

A. <u>Request no. 5</u>

Nature's Best's Document Request no. 5 asks CytoSport to "produce all documents evidencing, referring or relating to any and all trademark watches or trademark searches for any mark comprising or containing the word 'milk.'"

CytoSport asserts it has provided some information to defendant regarding companies it has sent cease and desist letters to and sued for trademark infringement regarding the MUSCLE MILK trademark. However, CytoSport objects that the request seeks confidential information. It further responded that "CytoSport has no watch service. CytoSport's attorney's have a watch service, which constitutes work product and which is also not relevant to the present legal proceedings and will not be produced." *See* Joint Statement, at 16:15-17.

CytoSport's assertion that "its attorneys" (not CytoSport itself) have a watch service appears evasive. Moreover, its response does not comply with the requirements of Fed. R. Civ. P. 26(b)(5)(A), which requires the party making a claim of work product protection to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the . . . protection."

The work product doctrine, codified in Fed. R. Civ. P. 26(b)(3), protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation. *United States v. Torf (In re Grand Jury Subpoena)*, 350 F.3d 1010, 1015 (9th Cir. 2003) (citations omitted). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's

9

case." *Id.* (quoting *United States v. Nobles*, 422 U.S. 225, 238-39 (1975)).

To qualify for protection against discovery, documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative. *Torf*, 350 F.3d at 1015. "A document should be deemed prepared "in anticipation of litigation" and thus eligible for work product protection under Rule 26(b)(3) if, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id.* at 1016 (citations omitted). "The question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation. The circumstances surrounding the document's preparation must also be considered." *Id.* If the document's "litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated" then work product protection is appropriate. *Id.* at 1018.

The court acknowledges that trademark watch services are used to police an owner's trademark, and as a result, may lead to litigation if a potentially infringing mark is discovered. Although the motive in employing a watch service is to protect one's mark, the specter of litigation at the time a search report is generated is abstract at best. The search reports, by themselves, contain factual information and not an attorney's mental impressions. For these reasons, trademark watch service reports are not entitled to work product protection or attorney-client privilege. *See* 3 McCarthy on Trademarks and Unfair Competition § 20:112 (4th ed.) (citing *Fisons, Ltd. v. Capability Brown, Ltd.*, 209 U.S.P.Q. 167 (T.T.A.B. 1980); *Miles Laboratories, Inc. v. Instrumentation Laboratory, Inc*., 185 U.S.P.Q. 432 (T.T.A.B. 1975); *Goodyear Tire & Rubber Co. v. Tyrco Industries*, 186 U.S.P.Q. 207 (T.T.A.B. 1975); *Amerace Corp. v. USM Corp*., 183 U.S.P.Q. 506 (T.T.A.B. 1974); *Masterpiece of Pennsylvania, Inc. v. Consolidated Novelty* Co., 183 U.S.P.Q. 344 (S.D.N.Y. 1974)); *see also* (as to patent searches) *EZ Loader Boat Trailers, Inc. v. Shoreline Trailer Sales, Inc*., 207 U.S.P.Q. 1002, 1004 (N.D. Tex.

1979) ("a party would certainly be entitled to inquire whether and when a patent search was conducted and whether his patent was brought to the attention of the alleged infringer"); *Masterpiece of Pennsylvania, Inc. v. Consolidated Novelty Co.*, 183 U.S.P.Q. (BNA) 344 (S.D.N.Y. 1974) (holding that trademark searches by date with the name of the trademark service were discoverable and were not protected by work product).

Accordingly, CytoSport's claim of blanket work product protection for trademark watch files possessed by "its attorneys" is unconvincing. CytoSport shall produce the documents requested in document request no. 5. To the extent that any of the requested information is privileged, CytoSport shall identify such documents in a privilege log that complies with Fed. R. Civ. P. 26(b)(5)(A). To the extent that any of trademark watch reports contain an attorney's opinion or impressions as to the legal significance of the watch report, CytoSport shall provide redacted copies of such reports, and shall identify such redactions in the privilege log.

B.  Request no. 8

Document request no. 8 asks CytoSport to "produce all documents evidencing, referring or relating to any analysis by you, or by any third party at your request, conducted or intended to be conducted, on the CytoSport MICELLAR [*sic* MUSCLE] MILK product, including without limitation any chemical, biological, nutritional, or other scientific analysis."

CytoSport responded that it has no "internal documents responsive to this request." Joint Statement, at 17:4-13. The court reminds CytoSport that simply because it may have no "internal documents" responsive to the request, this does not relieve it of its obligation to produce documents within its "possession, custody or control." Fed. R. Civ. P. 34. Control is defined as the legal right to obtain documents upon demand. *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999). To the extent CytoSport represents that it has produced all the requested information in its possession, custody or control, the court orders CytoSport to provide a verified response to that effect.

////

11

Finally, to the extent CytoSport believes that this request seeks "formula information,"which the parties have privately stipulated not to produce, the court declines to order production of such information at this time, without prejudice to Nature's Best. As discussed at the hearing, the parties shall have additional time to further negotiate the scope of that agreement and what does and does not constitute the "formula information" neither purportedly seeks from the other. The court shall revisit this issue pending a status report from the parties, due April 11, 2007.

C. Request no. 12

Request for Production no. 12 asks CytoSport to "produce all documents evidencing, referring or relating to companies, firms, organizations, third parties, or other persons whom [it has] engaged, hired, paid, communicated with, or consulted in connection with the development, commercial marketing, or promotion of the CytoSport MUSCLE MILK product, or any mark used by CytoSport comprising or containing the word 'milk.'"

CytoSport produced some documents in response to this request, which Nature's Best has characterized as largely unresponsive. *See* Joint Statement, at 18:7-11. CytoSport has also indicated that the development, commercial marketing, and promotion of MUSCLE MILK was handled in-house. *Id.*, at 18:12-19. As Nature's Best points out, this request encompasses "in-house" information, despite CytoSport's belief to the contrary. CytoSport further comments that it "believes that it has produced all responsive and potentially responsive documents." Joint Statement, at 19:3-4.

CytoSport shall produce all documents responsive to this request, including those that were "handled in-house." CytoSport shall also provide a verified response that it has produced all documents responsive to this request.

D. Request no. 15

Request for Production no. 15 asks CytoSport to "produce all documents evidencing, referring or relating to the conception or approval of the CytoSport MUSCLE MILK product

including without limitation all documents evidencing, referring or relating to development of a product containing proteins or ingredients found in or derived from milk, documents evidencing, referring or relating to decisions to use any mark that comprises or contains the word 'milk,' and all documents evidencing, referring or relating to decisions not to use other marks in connection with the CytoSport MUSCLE MILK product."

Nature's Best indicates that CytoSport has produced only "various publicly available documents and one internal memo," and that in an amended response it represented that it had produced all responsive documents other than the "formula." Joint Statement, at 19:26-20:2. The parties' dispute as to this request centers on the scope of their agreement not to produce "formula information." The court therefore declines to order production of the requested information at this time, without prejudice to Nature's Best. The parties shall have additional time to further negotiate the scope of their agreement regarding production of "formula information." The court shall revisit this issue pending a status report from the parties, due April 11, 2007.

E. <u>Request No.19</u>

Document Request no. 19 asks CytoSport to "produce all documents evidencing, referring or relating to the ingredients and/or composition of the CytoSport MUSCLE MILK product including any documents evidencing, referring or relating to prior formulations, proposed formulations, or comparisons of the formulation of the CytoSport Product to any other product."

Again, the parties' dispute as to this request centers on the scope of their agreement not to produce "formula information." As directed above, the court declines to order production of the requested information at this time, without prejudice to Nature's Best. The parties shall have additional time to further negotiate the scope of their agreement regarding production of "formula information." The court shall revisit this issue pending a status report from the parties, due April 11, 2007.

////

////

F. Request no. 20

Request for Production no. 20 asks CytoSport to "produce documents evidencing, referring or relating to the commercial marketing or promotion of the product which eventually became known as 'MUSCLE MILK,' including, without limitation, drafts or final copies of any of the following: feasibility studies, marketing plans, marketing forecasts, sales, estimates, projections of market share, periodic research and development reports, formulation proposals, studies, evaluations, marketing or promotion, market share, management reports and/or other periodic reports, advertisements, promotional brochures, product literature, catalogs, trade show exhibits or displays, photographs, videotapes, data sheets, models, specifications, price lists, or other communications with third parties."

At the March 28, 2007, hearing, the parties indicated that they had resolved their concerns regarding this request. Accordingly, the court issues no order as to this request.

G. Request no. 26

Request for Production no. 26 asks CytoSport to "produce documents identifying all food products and dietary and nutritional supplements bearing trademarks or names that comprise or contain the word milk."

CytoSport objected to this request on the basis of, among other things, overbreadth. In the Joint Statement, Nature's Best specified that it seeks documents in "plaintiff's custody or control that relate to third-party use of milk formative marks in connection with specific products." Joint Statement, 24:24-25. CytoSport's amended response to this request was that its "attorneys do have litigation files relating these matters. However, these documents are voluminous and not likely to lead to the discovery of admissible evidence and in some instances covered by protective orders related to those cases." Joint Statement, at 25:16-20. CytoSport's representation as to the voluminous nature of its attorneys' files, as stated, is not a proper objection for withholding the requested information.

In the Joint Statement and at the hearing, the parties represent that they have agreed to

limit this request to "correspondence between Cytosport and third parties (both direct correspondence and communication through counsel), (b) settlement agreements and (c) written responses to interrogatories and documents requests." Joint Statement, at 26:11-16.

At the hearing, Nature's Best agreed to redraft this request so it more specifically identifies the documents sought. At the hearing, CytoSport represented that it believes it has produced all responsive documents in its custody, but noted that it has not produced the "watch service" documents discussed above with respect to request no. 5. The court has determined that CytoSport's work-product objections to request no. 5 are not well-founded.

Accordingly, CytoSport shall provide all responsive documents to request no. 26 within its possession, custody or control within thirty days of being served with the redrafted request. The parties may agree to limit this request to the information referenced above, as set forth in the Joint Statement. Joint Statement, at 26:11-16. To the extent any of the requested information is privileged, CytoSport shall identify such documents in a privilege log that complies with Fed. R. Civ. P. 26(b)(5)(A). To the extent any of trademark watch reports contain an attorney's opinion or impressions as to the legal significance of the watch report, CytoSport shall provide redacted copies of such reports, and shall identify such redactions in the privilege log. CytoSport is further ordered to produced the documents from other cases purportedly requiring a court order for release.[2] CytoSport shall also provide verification that it has in fact produced all documents responsive to this request.

### H. Requests nos. 27-28

Request for Production no. 27 asks CytoSport to "produce all documents evidencing, referring or relating to action CytoSport has taken regarding each of the products listed in response to Interrogatory No. 11 [sic 10], and regarding all agreements or other arrangements

---

[2] The court notes that at the hearing, CytoSport indicated its willingness to disclose certain legal documents from other cases that were covered by stipulated protective orders or other agreements, but informed the court that an order from this court was necessary to accomplish such disclosure. This constitutes the requisite order for disclosure.

15

1 resulting from such actions." Request no. 28 provides, "produce all documents evidencing,
2 referring or relating to those products listed in response to Interrogatory No. 11 [sic 10]."

3 In the Joint Statement and at the hearing, the parties represent that they have agreed to
4 limit these requests to "correspondence between Cytosport and third parties (both direct
5 correspondence and communication through counsel), (b) settlement agreements and (c) written
6 responses to interrogatories and documents requests." Joint Statement, at 26:11-16; 27:5-7.

7 The court therefore orders Cytosport to produce the information requested in nos. 27 and
8 28, as limited by agreement of the parties set forth in the preceding paragraph. To the extent the
9 referenced settlement agreements require a court order for disclosure, the court hereby makes that
10 order. Further, given some dispute at the hearing as to whether CytoSport should produce any
11 transcripts of testimony from other lawsuits, the court orders CytoSport to provide a verified
12 response that no such testimony exists.

13 I. Requests nos. 29-30

14 Request for Production no. 29, asks CytoSport to "produce all documents evidencing,
15 referring or relating to all communications between you and any third parties who use or have
16 used trademarks or names that comprise or contain the word 'milk' or in connection with food
17 products and dietary and nutritional supplements." Request for Production no. 30 requests "all
18 documents evidencing, referring or relating to all agreements between you and any third party
19 who uses or has used trademarks or names that comprise or contain the word 'milk.'"

20 CytoSport produced some documents in response to these requests, but otherwise objected
21 to their relevance, and referred Nature's Best to its response to Requests for Production nos. 26
22 and 27. CytoSport states it has produced responsive documents as set forth in its responses to
23 nos. 26 and 27, and "did not see the point of repeating that list." Joint Statement, at 28:17-20.

24 CytoSport is admonished that the point in repeating itself in response to a distinct
25 discovery request lies in Rule 34(b). That Rule requires a party to provide a response "with
26 respect to *each* item" requested. Fed. R. Civ. P. 34(b) (emphasis added). That Rule also requires

16

any objections to a discovery request to be specific. Mere reference to a previous response is not a sufficiently specific objection.

Ironically, by making general objections based on those asserted with respect to Requests for Production nos. 26 and 27, CytoSport seems to concede the relevance of requests nos. 29 and 30. In the Joint Statement discussing Requests for Production nos. 26 and 27, CytoSport concedes the relevance of "prior lawsuits" and "settlement agreements" with third parties. Joint Statement, at 26:23-28.

The court therefore orders CytoSport to produce the items requested by Nature's Best in Requests for Production nos. 28 and 29. The court also orders CytoSport to provide a verified statement that it has produced all such items in its possession, custody or control. To the extent the parties wish to limit the production to the items agreed upon with respect to requests nos. 26 and 27, they may do so. To the extent that any of the requested information is privileged, CytoSport shall specifically identify that information in a privilege log that complies with Fed. R. Civ. P. 26(b)(5)(A).

J. Request no. 32

Request for Production no. 32, asks CytoSport to "produce all documents supporting, referring or relating to the claim that CytoSport MUSCLE MILK is "Carb Conscious."

CytoSport initially objected to this request, arguing that it was not relevant, as discussed above with respect to Interrogatory no. 17. CytoSport's amended response provided that its use of the term "carb conscious" falls within the parameters of use of that phrase by others in the marketplace. Joint Statement, at 30:13. CytoSport has produced examples of such use, as discussed above with respect to Interrogatory no. 17, and claims those are its only responsive documents. *Id.*, at 29:25-28.

As explained there, the court finds that this request is relevant to the counterclaim filed by Nature's Best. Accordingly, CytoSport shall produce all documents encompassed by this request. To the extent it has previously produced all such documents, it shall provide a verified response

17

to that effect.

### K. Requests nos. 34-35

Request for Production no. 34, asks CytoSport to "produce all documents supporting, referring to or relating to the claim that CytoSport MUSCLE MILK is 'Lean Muscle Formula.'" Request no. 35 asks for all "documents sufficient to identify all products of CytoSport or any of its related companies that feature the phrase 'Lean Muscle Formula' on their labels or product material."

As it did with respect to interrogatories nos. 18 and 19, CytoSport objected to this discovery request on the basis of relevance. Again, it argued that defendant's inquiry into whether MUSCLE MILK truly has a "Lean Muscle Formula" was irrelevant to the trademark action. The court renews its finding that these requests are relevant to defendant's counterclaim and defenses, and orders CytoSport to produce all documents in its possession, custody or control that are responsive to requests for Production nos. 34 and 35. To the extent that CytoSport has previously produced all such responsive documents, it shall provide a verified response to that effect.

### L. Requests nos. 39-46

Request Nos. 39-46 essentially request all documents "evidencing, referring, or relating" to the grams of fat, number of calories, grams of protein, and grams of carbohydrates contained in various MUSCLE MILK products.

In response to these requests, CytoSport has produced the labels for its product. Nature's Best seeks more information in order to test the accuracy of CytoSport's assertions regarding MUSCLE MILK.

Again, the parties' dispute as to these requests centers on the scope of their agreement not to produce "formula information." As discussed above, the court declines to order production of the requested information at this time, without prejudice to Nature's Best. The parties shall have additional time to further negotiate the scope of their agreement regarding production of "formula

information." The court shall revisit this issue pending a status report from the parties, due April 11, 2007.

## IV. CONCLUSION

In accordance with the foregoing, defendant's motion to compel is granted in part as set forth more specifically above. The court shall revisit the motion to compel with respect to Requests for Production nos. 8, 15, 19, and 39-46. The parties shall continue efforts to resolve their disputes concerning the scope of their agreement not to produce "formula information." The parties shall file a status report no later than April 11, 2007, advising the court of their progress in that regard, and if necessary shall set the matter for further hearing.

SO ORDERED.

DATED: April 4, 2007

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE